Pee Curiam.
 

 These causes upon bill and cross-bill in equity, the answers thereto, and replications and evidence, * came on to be heard; and on the hearing, these facts following appeared. On the 26th December, 1791, a grant issued to Robert King for 600 acres of land. It covers the land in controversy, and is founded upon a removed warrant, ordinarily called a supernumerary. The land came by mesne conveyances to Berry. Also, a grant issued for 200 acres, on J. Henderson’s entry, No. 2,240, the grant dated the 10th of June, 1799. It Covers part of the land in King’s grant, and part of the land in Walden’s grant.
 

 On the other side are Walden’s grants. One on entry 2,351, for 640 acres, in the name of W. Bailey, dated the 9th of December, 1797. Two other grants of a prior date have issued on the same warrant. Walden brought ejectment the 11th of June, 1797, that is, for all the lands in King’s grant, except a small grant. Berry filed this bill; issues were directed, and the jury have found that Berry’s grant for 200 acres was the land called for by his entry, and that Walden’s grant on Bailey’s entry does not cover the land called for in Bailey’s entry. Consequently, this grant of Walden’s can no longer be opposed to Berry’s grant of 1791. Walden has one other grant, issued to Williams in 1793, upon an entry in the name of Presly Smith, dated the 12th of September, 1779, “ 640
 
 *409
 

 acres, joining J. B. Smith’s entry, on the water of Powell’s River,”
 
 conveyed to Walden the 15th of November, 1795; The locality of this grant is not proved to be the same with that of the entry which is to join the entry of W. Wigginn Smith. That begins near a spring at the upper end of an old Indian town, the north side of Powell’s River, below Cumberland Gap. Mounds are proved to be everywhere in that neighborhood in abundance, but no town. Indian Town Creek is six or eight miles from it. The locality not being proved, we are relieved from the consideration of the speciality. The title commences at the date of the grant, which *is posterior to Berry’s title of 1791. Walden has also a third grant, upon entry 1,589, to J. Bailey Smith, the 12th of September, 1779, for 640 acres, dated the 26th of December, 1791, covering part of the 200 acres on Henderson’s entry, and part of King’s grant of 1791. These are the words of J. Bailey Smith’s entry. Washington County, September 12th, 1779. . “
 
 J. Bailey Smith enters
 
 640
 
 acres of land, joining W. Wiggesten Smiths entry, running down for complement.”
 
 William Wiggesten Smith enters 640 acres of land, beginning near a spring at the upper end of the Indian old town, the north side of Powell’s River, below Cumberland Gap. Berry conveyed to Condry, Love, Baker, and Ritchie, all the lands he held by patents. The deeds of conveyance are dated 1779 and 1800. A
 
 fi. fa.
 
 issued against him, and the sheriff sold his right in all the lands within said patents, in 1806, to Moses Davis. This fact is alleged by Walden in his cross-bill. And also he there alleges that a grant issued to Findley on Henderson’s warrant, long before the grant to Berry on the same warrant.
 

 As the grant of 1797 to Walden must be laid aside, and also that to Williams of 1793, the remaining question is as to the grant to Walden of the 26th of December, 1791. It is numbered 228; King’s is numbered 240 ; both issued on the same day. The preference belongs to that of Walden, being of the older number. There is no equity for Berry’s grant to relate to; it is founded on a removed warrant. All the lands contained within its bounds then belong to Walden and not to Berry, though in part, also, within the bounds of his grant.
 

 As to the act of limitations, there seems not to have been a possession on either side which can establish the title of either. Wal
 
 *410
 
 den bad possession of one part by his agent before he came hither •himself in 1793, which extended as far as his grant of 1791; * but not to any part of King’s grant not covered by
 
 that.
 
 Such parts of King’s grant, which are not covered by Walden’s grant of 1791, were also not covered by any other opposing grant till 1795 and 1797. And the ejectments were commenced in 1799, before the lapse of seven years from either period. The possession of the parts in the interim, not being of seven years’ duration, could not ripen into title. The part covered by Walden’s grant of 1791 needed no act of limitations on the side of Walden, for he had title from the beginning. There has not been any adverse possession sufficient to divest his title. If Johnson lived on those parts covered by Walden’s grant of 1791, earlier than 1793, Davis and Walden, who lived upon them as early as 1793, defeated the operation of the act of limitation. Johnson had not a precedent possession for seven years of lands which had ceased to be unappropriated. Where a tract is covered by two grants, and both grantees are in possession of the parts so covered by both, the possession operates nothing, for it is deemed to continue in him who hath the title. Upon this view of the case, Berry’s title is better than Walden’s under the grant of 1797, and better than his under the grant of 1793, but inferior to it under the grant of 1791, and for so much the verdict ought to be enjoined.
 

 But here again Berry is met with objections. He has conveyed away all his interest in these lands. Answer: he is a defendant to the actions of ejectment in which Walden had judgment, for all the lands in the grant to Walden of 1797. He, Berry, conveyed with warranty to others, all the lands that are beyond the Bounds of Walden’s grant of 1791. By the execution of the judgment his bargainees would have been turned out of possession, and would have resort to him for indemnification. He would not have been able to repel the claim, he being party in the ejectment, and therefore estopped to say that the bargainees * had still a good title under the conveyances. For the prevention of this mischief, and to settle by a single suit in equity all these claims of Berry and Walden, and of the bargainees of Berry against himself, and to procure the indemnity which he is entitled to against all of them, it seems to us he might well come into this court by his bill in equity, to have a perpetual injunction against
 
 *411
 
 Walden from taking ont execution on bis said judgment. By this means the several actions against himself by the bargainees will be prevented, the bargainees quieted, and the right so far ascertained as probably to put an end to disputes between the conflicting titles arising on these grants. See Newland, 98; Cooper, 158,154, 157. Again, Walden recovered’in the ejectments not by the uncorroborated strength of his grant of 1797, which was the only grant that covered the lands not covered by Walden’s grant of 1791; for that grant of 1791 is of a date later than King’s, which issued in 1791; but he recovered by the relation of his grant of 1797 to the entry, on which it purported to be founded, which was anterior to the year 1791. If this entry did not create an equity to which his grant of 1797 could relate, then it stood upon its date only, and was inferior to King’s. Whether such equity did exist or not was1 undoubtedly a question of equitable cognizance, more especially as two other grants of a prior date issued upon the same warrant. The nature of the question is certainly equitable. The equity is in part constituted by its locality, which has been tried under the direction of this court on the equity side ; and that verdict now is a very operative ingredient in the present discussion. It cannot be objected that Berry might have brought his ejectment; for wm are satisfied with the former determinations of this court, that where a plaintiff sues at law, on ejectment, when he might have sued in equity, the matter of his complaint being proper for either jurisdiction, and is defeated * there, that he may still sue again in equity. For he is not concluded by the first verdict and judgment from bringing a second suit in ejectment. And why not bring the second suit in equity, as well as at law by ejectment ? If this privilege be indulged to the plaintiff, why not also to the defendant, who it is admitted by the objection is not concluded at law.
 

 As to improvements made by Walden on the lands not covered by his grant of 1791, there is no evidence.
 

 Concerning the sheriff’s sale by execution, whether Ritchie’s part was included or not by his deed, it was sold and intended to be conveyed to him, and is not liable to be sold by execution a's the property of Berry ; the vendee must take precisely as the defendant held, subject to all equities that he was, and liable to convey to others as he was. The purchaser at execution sale could not ac
 
 *412
 
 quire anything. Indeed, in this instance he would not even have a legal estate; for the jury would ascertain by evidence and correct the mistake which is alleged to exist in his deed, and to exclude a part of the lands within his grant. The land, then, at the time of the sale, was not Berry’s, either in law or equity. The sheriff’s sale is of no effect.
 

 No comparison need be made between the grant to Berry for 200 acres on Henderson’s entry, and the grant to Walden of 1791; for Berry’s counsel do not claim any lands within the bounds of Walden’s grant of 1791. We dismiss them, therefore, from our consideration.
 

 And here we must remark, that the lands claimed by Walden in his ejectments, were not those which he occupied within the bounds of his grant of 1791, but those which were not in his possession, and beyond the bounds of that patent. These are the lands re* specting which the present proceedings have been instituted in equity on both sides. He hath no just pretense for this claim; and hath been the unjust cause * of all the costs at law and in equity which have accrued in these suits. He ought therefore to pay them. Bailey ought to be dismissed without costs. He need not have been made a defendant. He might have been used as a witness.
 

 Decree a perpetual injunction as to all the lands within the bounds of King’s grant, and not within the bounds of Walden’s grant of 1791; and that the injunction be dissolved as to all the lands within the bounds of this grant of 1791 of Walden ; and that Walden pay all costs both in law and equity. Decree also, that the cross-bill be dismissed with costs to be paid by Walden.
 

 Note.
 
 Before the court were relieved from the consideration of Henderson’s entry, and the grant upon it, and from contrasting the same with Walden’s grant of 1791, they were led to investigate their legal priority and relation ; the judges came unanimously to the opinion which follows, but did not determine the same, because the disclaimer of Berry’s counsel, before mentioned, superseded the necessity thereof. This is their opinion: —
 

 As to several grants issuing upon the same entry, it seems to us that a position may be assumed that will not be liable to question. If the entry and grant both together constitute a perfect title, that is a title both in law and equity. An entry alone, if it be a special
 
 *413
 
 entry, is an equitable title. A grant alone is a legal title so long as it remains unrepealed. What, then, are the consequences of this axiom ? One consequence is, that a grant cannot relate when it is not founded on equitable title. If one gets a grant without entry it cannot relate. If one gets a grant without having a right to the entry, it cannot relate. If he be entitled to the entry, and the grant be for other land than that entered, it cannot relate. If the enterer obtain a grant for the land entered, after an assignment legally made by him, it cannot relate. He has then no * equitable title to be united to the legal one. If there be two grants for the land entered to different grantees, that grant cannot relate which is not founded on the equitable estate, which belongs either to the grantee or the legal assignee. If the grantee be the enterer and he has not assigned, it will relate. If he has assigned, it will not. The assignee of the enterer will prevail against one who is not an assignee. A first assignee will prevail against a latter. Thus, when the grantee claims title from the date of the entry, and another grantee claims from the entry also, by assignment, it must be ascertained whether he really were an assignee or not. If no proof be made on the other side, it must be decided from circumstances whether the assignment were really made or n'ot. If the enterer acquiesced for many years after the assignment was claimed by and acted upon without impeaching it, such assignment ought to be presumed regular, unless there be circumstances probably accounting for the acquiescence. If both grantees claim as assignees, the same presumption attaches, and he must be deemed the true assignee, whose assignment is first dated, or if no date, was first made, to be determined by circumstances. If proof be made by positive testimony, that one of the assignments was not made by the enterer, or by his authority, then the other assignment ought to be considered the true one. If there be several of these, and no proof made concerning them, presumption and date will decide the priority. If the enterer be a trustee, and that do not appear on the entry, and be not known to the purchaser of the entry, his grant founded thereon will relate ; for he hath the legal and equitable right to the entry.
 

 See King’s Digest, 5512, 6488, 7949.